IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

HOME CASUAL ENTERPRISE, LTD.,
ZHEJIANG HEMEI LEISURE
PRODUCTS CO., LTD., HANGZHOU
VOLLY GARDEN FURNITURE CO., LTD.,
And HANGZHOU KING-REX FURNITURE
INDUSTRY CO., LTD.,

OPINION AND ORDER

15-cv-803-wmc

    Appellants,

v.

ROBERT T. KASDORF,
Trustee of Home Casual, LLC,

    Appellee.

---

Appellants Home Casual Enterprise, Ltd., Zhejiang Hemei Leisure Products Co., Ltd., Hangzhou Volly Garden Furniture Co., Ltd., and Hangzhou King-Rex Furniture Industry Co., Ltd., appeal from a final decision of the United States Bankruptcy Court for the Western District of Wisconsin, which voided their garnishment of a debt owed by a third party to the debtor, Home Casual, LLC, and allowed the bankruptcy trustee, appellee Robert Kasdorff, to recover the garnished funds from appellants for the benefit of the bankruptcy estate. After reviewing the parties' submissions and the bankruptcy record, the court will affirm the bankruptcy court's decision.

BACKGROUND

Some background information is necessary to understand the bankruptcy court's decision and the issues on appeal, although a more fulsome description of the facts, which were uncontested by the parties, can be found in the bankruptcy court's decision, from

which this brief summary is drawn. *See* Dkt. #1, exh. #1; *Kasdorff v. Home Casual Enterprise, Ltd. et als.*, Adv. No. 15-00043 (Bankr. W.D. Wis.) (Bankr. dkt. #69).[1]

Appellants are Home Casual Enterprise, Ltd. ("HCEL") and several Chinese factories—Zhejiang Hemei Leisure Products, Hangzhou Volly Garden Furniture, and Hangzhou King-Rex Furniture Industry—that supplied outdoor furniture to Home Casual LLC, the underlying debtor in this case. In September 2011, while in default to appellants, the debtor assigned in excess of $79 million in purchase orders to HCEL. Because this assignment failed to satisfy all of the debtor's obligations, appellants filed a diversity action in federal court to collect from the debtor, and on November 19, 2012, appellants obtained a judgment in the amount of $10,813,493.00.

Appellants then filed a non-earnings garnishment action in the Dane County Circuit Court against Brian Sanderson, who had issued a promissory note to the debtor. Sanderson accepted service of the complaint on December 28, 2012, and the state circuit court granted judgment in favor of appellants on March 19, 2013. The state court then ordered Sanderson to pay appellants the $250,000 due under the promissory note, which Sanderson ultimately did on April 1, 2013. However, HCEL subsequently returned the payment to Sanderson, and the payment was not credited toward appellants' judgment against the debtor.

The debtor filed a chapter 11 bankruptcy case in the bankruptcy court on March 29, 2013, which was converted to a chapter 7 on April 23, 2013. On March 26, 2015,

---

[1] Citations to "Dkt." refer to this court's docket, while citations to "Bankr. Dkt." refer to the bankruptcy court docket.

appellee Robert Kasdorf, the chapter 7 trustee, commenced an adversary proceeding against appellants in order to avoid transfers, compel turnover, and disallow claims with respect to the debtor's property.

Following a trial in the bankruptcy court on August 14, 2015, Judge Martin issued a decision, which held that the garnishment of Sanderson's debt was an avoidable transfer under 11 U.S.C. § 547 received within 90 days of the filing of the bankruptcy case. Particularly relevant to the pending appeal, Judge Martin specifically rejected appellants' contention that their lien arose when Sanderson accepted service of the garnishment complaint on December 28, 2012, and instead found that they obtained a lien when the state court entered the garnishment judgment on March 19, 2013. Because the bankruptcy court did not authorize Anderson's subsequent payment to appellants on April 1, 2013, Judge Martin held that it was a voidable, post-petition transfer of estate property under 11 U.S.C. § 549, which the trustee could recover from the appellants for the benefit of the estate under § 550. Judge Martin further found that: (1) appellants' unexplained return of funds to Sanderson did not change his analysis; and (2) all of the appellants' claims against the debtor should be disallowed and payment delayed until appellants paid to the trustee the amount transferred from the Sanderson promissory note, plus interest.

OPINION

"In a bankruptcy appeal, issues of law are reviewed de novo; factual findings may be set aside only if they are clearly erroneous." *In re Kelly*, 392 B.R. 750, 754 (W.D. Wis. 2007) (citing Fed. R. Bankr. P. 8013). "A finding is 'clearly erroneous' when although

there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Smith*, 582 F.3d 767, 777 (7th Cir. 2009) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

Relevant to this appeal is 11 U.S.C. §§ 547(b)(4), 549(a), and 550, which allow a bankruptcy trustee to avoid and recover the transfer of a debtor's property that was not authorized by the bankruptcy court and was made within 90 days before the debtor filed for bankruptcy. The parties refer to this provision as the "90-day preference period." In particular, section 101(54)(A) of the bankruptcy code defines the term "transfer" to include the "creation of a lien," which is in turn defined under § 101(37) as a "charge against or interest in property to secure payment of a debt or performance of an obligation." The bankruptcy code does not define what constitutes an "interest in property," but the parties agree that state law defines the term in the absence of a federal definition. *See Butner v. United States*, 440 U.S. 48, 54-55 (1979); *In re Freedom Group*, 50 F.3d 410 (7th Cir. 1995); *In re Wayco, Inc.*, 947 F.2d 1330 (7th Cir. 1991).

Appellants argue that the bankruptcy court erred in finding that their lien on the Sanderson promissory note arose during the 90-day preference period, thereby allowing the bankruptcy trustee to avoid and recover the $250,000 that appellants garnished. The undisputed facts show that the debtor in this case filed for bankruptcy on March 29, 2013, which means that the 90-day preference period began to run on December 29, 2012. While appellants obtained a judgment against the debtor on November 19, 2012, and Sanderson accepted service of appellants' garnishment complaint on December 28, 2012,

both of which occurred before the start of the 90-day preference period, appellants did not obtain the garnishment judgment until March 19, 2013, still within the 90-day preference period.

This appeal turns then on the bankruptcy court's rejection of appellants' contention that their lien arose when Sanderson accepted service of the garnishment complaint and determination that the lien arose when the state court entered the garnishment judgment. In reaching his decision, Judge Martin looked to Wisconsin state law regarding garnishments to determine at what point a lien or an interest in property arises in a garnishment action. While noting that there is no mention of the term "lien" in the state garnishment statute, Wis. Stat. § 812.18(1), he pointed out that the Wisconsin Supreme Court has drawn a relevant distinction between equitable and actual liens in the context of garnishment actions:

> It is clear that under our statutes a garnishment does not create a lien, strictly so called, on the property of the principal debtor in the hands of the garnishee. The interest obtained is of an inchoate character. It does not reach the property so as to constitute an actual interest therein, though it is true that such interest has been commonly called, by this and other courts, an equitable lien. The plaintiff cannot follow the property on the strength of any legal or even equitable interest therein, from the mere fact of the service of the garnishee process, but can control the property by seasonably acting to that end and thereby put the court in possession of the res.

*Bank of Commerce v. Elliott*, 109 Wis. 648, 85 N.W. 417, 420 (1901).

Relying on these statements in *Bank of Commerce*, Judge Martin held that "a creditor obtains an equitable lien upon service, which is not an actual interest until the creditor obtains a judgment." (Bankr. dkt. #69 at 4.) He, therefore, reasoned that an equitable

5

lien did not satisfy the bankruptcy code's definition of the term lien as a "charge against or interest in property." (*Id*. at 5 (citing 11 U.S.C. § 101(37).)

As an initial matter, appellants argue that despite the Wisconsin Supreme Court's ruling that the service of a garnishment complaint (referred to as a garnishment levy) does not create an actual lien on the debtor's property, the court ultimately concluded in *Bank of Commerce* that "the plaintiff in a garnishee case, as it seems, does acquire a special interest, even in a mere indebtedness of the garnishee to the defendant, denominated a lien, regardless of the diversity of opinion as to its real character." *Bank of Commerce*, 85 N.W. at 421. As a result, the court held that "[i]t is sufficient for this decision to reach the conclusion that it has been commonly called a lien, and may reasonably be so called, using the term in a qualified sense." *Id*.

As appellees argue and Judge Martin relied upon, however, the supreme court also held in *Bank of Commerce* that even though service of a garnishment action provides the plaintiff with a special interest, it creates what is best described as an equitable lien that is still qualified in nature. Indeed, citing its earlier holding in *Bank of Commerce*, the Wisconsin Supreme Court explained in a more recent case that "courts have uniformly said . . . that the service of a garnishee process is an equitable levy upon the property of the debtor in the hands of the garnishee, and that the interest thereby obtained in such property is at least in the nature of an equitable lien and has been commonly called a lien." *Associated Bank N.A. v. Collier*, 2014 WI 62, ¶ 32, 355 Wis.2d 343, 852 N.W.2d 443. Therefore, this court concludes that the bankruptcy court correctly interpreted *Bank of Commerce* to

6

hold that the service of a garnishment complaint constitutes no more than an equitable lien or a lien of inchoate character.

Next, appellants argue that the bankruptcy court failed to account for the supreme court's more recent decision in *Collier*, particularly its holding that "[a] judgment creditor obtains an interest in a judgment debtor's identified, non-exempt personal property superior to other unsecured creditors when it . . . levies that property" by, among other things, "serving the garnishee defendant in a garnishment action to seize specific property in the hands of the garnishee defendant." *Collier*, 2014 WI 62, ¶ 3. Appellants argue that this means that a property interest is created when a garnishment action is served. Appellants also argue that this interpretation is consistent with Wisconsin's garnishment statute, which provides that "[f]rom the time of service upon the garnishee, the garnishee shall be liable to the creditor for the property then in the garnishee's possession or under his control belonging to the debtor . . . and for all the garnishee's debts due to the debtor." Wis. Stat. § 812.18(1).

While appellants are correct that *Collier* stands for the proposition that serving the garnishee defendant in a garnishment action is a levy that creates a property interest superior to other creditors, they are incorrect in assuming that the supreme court made any finding with respect to the precise nature of that lien, which was Judge Martin's concern. The court in *Collier* focused on whether serving an order to appear for supplemental proceedings gives rise to a blanket lien on all of a defendant's personal property and cited *Bank of Commerce* for the rule that service of garnishment proceedings creates an equitable lien. The court also noted that "garnishment is a seizure in the hands

7

of the garnishee by notice to him, creating an *effectual* lien upon the garnished property to satisfy whatever judgment." *Collier*, 2014 WI 62, ¶ 32 (quoting *Morawetz v. Sun Ins. Office*, 96 Wis. 175, 178, 71 N.W. 109 (1897) (emphasis added). Even though the court in *Collier* noted that there was a "diversity of opinion as to [the levy's] real character," it did not disagree that this type of property interest is qualified; rather, the court found its decision in *Bank of Commerce* to be consistent with its holding and earlier decisions. *Collier*, 2014 WI App 62, ¶ 33. Further, although *Collier* instructs that the garnisher's interest was superior to that of other unsecured creditors, "perfection of a security interest and transfer are distinct concepts where perfection refers to the priority of rights among creditors and transfer is placement of funds into creditor's hands." *In Re Freedom Group*, 50 F.3d 410, 411 (7th Cir. 1995).

As appellees point out, the Court of Appeals for the Seventh Circuit addressed a similar issue in *In re Freedom Group*, 50 F.3d at 411-12, holding that service of a garnishment notice under Indiana law did not qualify as a transfer under the bankruptcy statute. As the Seventh Circuit explained, even though the notice of garnishment created an interest in property (in that case, an interest in current funds and future deposits in a bank account), the resulting lien was "tentative" in nature; "[b]etween the service of the notice of garnishment, corresponding to the delivery of a check, and the final order of attachment, corresponding to the bank's decision to honor (pay) the check, all sorts of events might intervene that would prevent the creditor from obtaining payment." *Id*. at 412. The court concluded, therefore, that a garnishment does not transfer property to a creditor for the purpose of an avoidable preference until the final order of garnishment is issued. *Id. See*

8

*also Barnhill v. Johnson*, 503 U.S. 393, 394-95 and 399 (1992) (Transfer within meaning of bankruptcy code did not occur until bank honored check delivered to creditor because "myriad of events can intervene between delivery and presentment of the check that would result in the check being dishonored.").

Appellants attempt to distinguish *In re Freedom Group* on the grounds that it: (1) was decided before a 2005 amendment to the bankruptcy code, which added "creation of a lien" to the definition of a transfer; (2) involved a bank account and not the type of debt at issue in this case; and (3) applied Indiana state law regarding property interests. None of these arguments are persuasive. With respect to the first, appellees correctly note that labeling a property interest a "lien" does not automatically qualify it as a transfer. For example, the Seventh Circuit in *In Re Freedom Group* was not concerned with the label placed on the property interest, and instead focused on whether the type of lien created by the service of a garnishment action was was certain enough to constitute a transfer for purposes of the preference avoidance provision.

The fact that the property at issue in *In Re Freedom Group* were funds in a bank account in no way diminishes the significance of the holding in this case. Like the court in *In Re Freedom Group*, Judge Martin held that the particular nature of the property interest was too tentative to qualify as a transfer. In fact, much like the interest in the future deposits to the bank account in *In Re Freedom*, appellants' service of the garnishment action on Sanderson gave them an interest in Sanderson's future payments to the debtor, not control over the promissory note itself.

9

Contrary to appellants' assertion, Wisconsin garnishment law also recognizes the tentative nature of the lien created by a garnishment levy. Appellants make much of the fact that unlike in *In Re Freedom,* where the garnishment levy functioned as a "passive freeze" on the funds controlled by the bank, the levy in this case is not tentative because it was created by a judicial process subject to state court control and imposed liability on the garnishee, giving the garnishing creditor a right to payment from the time of service. However, as early at 1898, the Wisconsin Supreme Court held that an equitable lien created by service of a garnishment process can "be waived by plaintiff's conduct" or "extinguished by a judgment in favor of the garnishee on appeal," meaning that like a bank account or check, it is possible that intervening events could prevent the garnishing creditor from obtaining payment, underscoring the tentative nature of such liens. *Maxwell v. Bank of New Richmond*, 101 Wis. 286, 77 N.W. 149, 150 (1898).

Accordingly, this court concludes that the bankruptcy court did not abuse its discretion in finding the garnishment levy obtained by appellants did not qualify as a transfer under the avoidable preference statute and affirms the bankruptcy court's order finding that the Sanderson promissory note is a voidable preference under 11 U.S.C. § 547 and that the $250,000 payment by Sanderson on April 1, 2013, is a voidable, post-petition transfer under 11 U.S.C. § 549.

ORDER

IT IS ORDERED that the decision of the bankruptcy court in the above-captioned case is AFFIRMED.

Entered this 30th day of September, 2017.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge